# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 15-11067

United States Court of Appeals
Fif h Circuit

**FILED**
March 20, 2017

Lyle W. Cayce
Clerk

AMERICAN HUMANIST ASSOCIATION; ISAIAH SMITH,

Plaintiffs–Appellees,

versus

JACK MCCARTY, in His Individual and Official Capacity;
JOE D. TOLBERT, in His Individual and Official Capacity;
BRAD GREENE, in His Individual and Official Capacity;
RICHARD DAVIS, in His Individual and Official Capacity;
RALPH KUNKEL, in His Individual and Official Capacity;
CARY HANCOCK, in His Individual and Official Capacity;
DOLORES WEBB, in Her Individual and Official Capacity,

Defendants–Appellants.

\* \* \* \* \* \* \* \* \*

No. 16-11220

AMERICAN HUMANIST ASSOCIATION; ISAIAH SMITH,

Plaintiffs–Appellants,

versus

BIRDVILLE INDEPENDENT SCHOOL DISTRICT;
JACK MCCARTY, in His Individual and Official Capacity;
JOE D. TOLBERT, in His Individual and Official Capacity;
BRAD GREENE, in His Individual and Official Capacity;
RICHARD DAVIS, in His Individual and Official Capacity;
RALPH KUNKEL, in His Individual and Official Capacity;
CARY HANCOCK, in His Individual and Official Capacity;
DOLORES WEBB, in Her Individual and Official Capacity,

Defendants–Appellees.

No. 15-11067 c/w
No. 16-11220

———————————

Appeals from the United States District Court
for the Northern District of Texas

———————————

Before SMITH, CLEMENT, and SOUTHWICK, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

The American Humanist Association ("AHA") and Isaiah Smith appeal a summary judgment for defendants, the Birdville Independent School District and its seven board members (collectively, "BISD"). AHA and Smith allege that BISD's policy of inviting students to deliver statements, which can include invocations, before school-board meetings violates the First Amendment's Establishment Clause. Because the practice falls more nearly within the re-cently reaffirmed legislative-prayer exception to the Supreme Court's Estab-lishment Clause jurisprudence, we affirm the summary judgment in favor of the school district and, in the accompanying consolidated appeal, we reverse and render on the denial of qualified immunity to the school board members.

I.

BISD is a public school district. Smith is a 2014 graduate of Birdville High School and a member of AHA, an organization that "advocate[es] progres-sive values and equality for humanists, atheists, and freethinkers."[1] While a student at Birdville High School and as an alumnus, Smith attended BISD board meetings, some of which included student-led prayers. At a board meet-ing in December 2014, with a student-led invocation, Smith said that he felt

———————————

[1] *See* American Humanist Association, https://americanhumanist.org (last visited Mar. 17, 2017).

No. 15-11067 c/w
No. 16-11220

affronted by the prayer and that it meant that BISD was "favoring religion over nonreligion." Smith is and has been an adult at all relevant times.

BISD's board holds monthly meetings in the District Administration Building, which is not located within a school. The meetings include sessions open to the public. Attendees are free to enter and leave at any time. Most attendees are adults, though students frequently attend school-board meetings to receive awards or for other reasons, such as brief performances by school bands and choirs.

Since 1997, two students have opened each session—with one leading the Pledge of Allegiance and the Texas pledge and the other delivering some sort of statement, which can include an invocation. Those student presenters, typically either elementary- or middle-school students,[2] are given one minute. BISD officials do not direct them on what to say but tell them to make sure their statements are relevant to school-board meetings and not obscene or otherwise inappropriate. At a number of meetings, the student speakers have presented poems or read secular statements. But according to AHA and Smith, they are usually an invocation in the form of a prayer, with speakers frequently referencing "Jesus" or "Christ." AHA and Smith claim that sometimes the prayers are directed at the audience through the use of phrases such as "let us pray," "stand for the prayer," or "bow your heads."[3]

From 1997 through February 2015, the student-led presentations were

---

[2] Of the 101 meetings from February 2008 to June 2016, elementary- and middle-school students delivered the presentations 84 times.

[3] According to AHA and Smith, these requests typically come from the student speakers, though on occasion a board member or other school official has asked the audience to stand for the invocation. At the summary-judgment stage, "we must assume the facts as alleged by the [plaintiff]." *Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 76 (1998).

3

No. 15-11067 c/w
No. 16-11220

called "invocations" and were delivered by students selected on merit.[4]  In March 2015, in an apparent response to AHA's concerns about the invocations,[5] BISD began referring to them as "student expressions" and providing disclaimers that the students' statements do not reflect BISD's views.[6]  BISD began randomly selecting, from a list of volunteers, the students who would deliver the expressions.[7]

## II.

AHA and Smith sued BISD under 42 U.S.C. § 1983 for monetary damages from the individual school-board members and declaratory and injunctive relief.  In their amended complaint, AHA and Smith alleged that BISD has a "policy, practice, and custom of permitting, promoting, and endorsing prayers delivered by school-selected students" at board meetings, in violation of the

---

[4] Each BISD campus selected students on a rotational basis (school-board members did not participate in the selection process).  Campus officials took into account academic achievement, leadership, citizenship, extracurricular activities, and other factors.

[5] In late 2014, AHA sent BISD a letter complaining of the invocations and asking BISD to provide "written assurances that prayer will not be included in future School Board meetings."  BISD's associate superintendent later testified that he recommended the policy changes so that the district "wouldn't be subject to litigation."

[6] The published policy, in its entirety, reads,

The subject of the student introductions must be related to the purpose of the event and to the purpose of marking the opening of the event; honoring the occasion, the participants, and those in attendance; bringing the audience to order; and focusing the audience on the purpose of the event.  A student must stay on the subject, and the student may not engage in obscene, vulgar, offensively lewd, or indecent speech.  The District shall treat a student's voluntary expression of a religious viewpoint, if any, on an otherwise permissible subject in the same manner the District treats a student's voluntary expression of a secular or other viewpoint on an otherwise permissible subject and may not discriminate against the student based on a religious viewpoint expressed by the student on an otherwise permissible subject.

[7] Though student speakers are chosen randomly from a pool of volunteers, that pool may not be representative of the BISD student body:  It consists only of members of the student leadership at the respective campuses.

No. 15-11067 c/w
No. 16-11220

Establishment Clause.  BISD answered that the student-led invocations either qualify as private speech, satisfy the conventional Establishment Clause tests, or fit within the legislative-prayer exception to those tests.

BISD moved to dismiss, alleging that AHA and Smith had failed to state a claim and that the school-board members were entitled to qualified immunity.  The district court denied the motion.  The individual-capacity defendants filed an interlocutory appeal challenging the denial of qualified immunity.

BISD moved for summary judgment.  The district court granted that motion, finding that the legislative-prayer exception applies.  AHA and Smith filed a separate appeal, bringing an issue of first impression to this court.[8]

### III.

The Supreme Court generally applies at least one[9] of three tests under the Establishment Clause: the *Lemon* test,[10] the endorsement test,[11] and the coercion test.[12]  But in *Marsh v. Chambers*, 463 U.S. 783, 784–85 (1983), a

---

[8] The qualified-immunity and summary-judgment appeals have been consolidated. Because there is no constitutional violation, we do not address qualified immunity except summarily to reverse the denial of immunity.

[9] *See Lynch v. Donnelly*, 465 U.S. 668, 679 (1984) ("[W]e have repeatedly emphasized our unwillingness to be confined to any single test or criterion in this sensitive area.").

[10] Under the *Lemon* test, for a government practice to be constitutional, it must (1) have a secular purpose, (2) have a primary effect that neither advances nor inhibits religion, and (3) not foster excessive government entanglement with religion. *Lemon v. Kurtzman*, 403 U.S. 602, 612–13 (1971).

[11] Under the endorsement test, a "[g]overnment unconstitutionally endorses religion whenever it appears to take a position on questions of religious belief, or makes adherence to a religion relevant in any way to a person's standing in the political community." *Ingebretsen ex rel. Ingebretsen v. Jackson Pub. Sch. Dist.*, 88 F.3d 274, 280 (5th Cir. 1996). "The government creates this appearance when it conveys a message that religion is favored, preferred, or promoted over other beliefs." *Id.*

[12] Under the coercion test, unconstitutional coercion occurs where "(1) the government directs (2) a formal religious exercise (3) in such a way as to oblige the participation of

No. 15-11067 c/w
No. 16-11220

member of the Nebraska Legislature sued state officials, claiming that the practice of opening each session with a chaplain's prayer violated the Establishment Clause. The Court upheld the practice without applying any of the conventional tests,[13] observing that "[t]he opening of sessions of legislative and other deliberative public bodies with prayer is deeply embedded in the history and tradition of this country." *Id.* at 786.

The Court revisited the issue in *Town of Greece v. Galloway*, 134 S. Ct. 1811, 1827–28 (2014), stating unequivocally that the legislative-prayer exception in *Chambers* extends to prayers delivered at town-board meetings. Those prayers, however, must not "denigrate nonbelievers or religious minorities, threaten damnation, or preach conversion." *Id.* at 1823. Moreover, "[t]he principal audience for these invocations is not . . . the public but lawmakers themselves, who may find that a moment of prayer or quiet reflection sets the mind to a higher purpose and thereby eases the task of governing." *Id.* at 1825.

As distinguished from legislative-prayer cases, however, the Supreme Court, in school-prayer cases such as *Santa Fe Independent School District v. Doe*, 530 U.S. 290 (2000), *Lee v. Weisman*, 505 U.S. 577 (1992), and *County of Allegheny v. ACLU*, 492 U.S. 573 (1989), has applied the conventional Establishment Clause tests. In *Weisman*, a graduation-prayer case, the Court, 505 U.S. at 592, explained that "there are heightened concerns with protecting freedom of conscience from subtle coercive pressure in the elementary and secondary public schools" and that "prayer exercises in public schools carry a

---

objectors." *Doe ex rel. Doe v. Beaumont Indep. Sch. Dist.*, 173 F.3d 274, 285 (5th Cir. 1999) (quoting *Jones v. Clear Creek Indep. Sch. Dist.*, 977 F.2d 963, 970 (5th Cir. 1992), *abrogated on other grounds by Doe v. Santa Fe Indep. Sch. Dist.*, 168 F.3d 806 (5th Cir. 1999)).

[13] *Chambers*, 463 U.S. at 796 (Brennan, J., dissenting) ("The Court makes no pretense of subjecting Nebraska's practice of legislative prayer to any of the formal 'tests' that have traditionally structured our inquiry under the Establishment Clause.").

particular risk" of unconstitutional coercion.  The Court distinguished *Weisman* from *Chambers*, noting that the legislative-prayer exception does not apply in "the public school context."  *Id.* at 597.  In *ACLU*, the Court opined that "state-sponsored prayer in public schools" is "unconstitutional."[14]

The key question, then, is whether this case is essentially more a legislative-prayer case or a school-prayer matter.  Like *Galloway*, this dispute is about the constitutionality of permitting religious invocations at the opening, ceremonial phase of a local deliberative body's public meetings.  But like *Santa Fe*, this case is about school-district-sanctioned invocations delivered by students on district property.

We agree with the district court that "a school board is more like a legislature than a school classroom or event."  The BISD board is a deliberative body, charged with overseeing the district's public schools, adopting budgets, collecting taxes, conducting elections, issuing bonds, and other tasks that are undeniably legislative.  *See* TEX. EDUC. CODE § 11.1511.  In no respect is it less a deliberative legislative body than was the town board in *Galloway*.

The invocations are appropriately "solemn and respectful in tone." *Galloway*, 134 S. Ct. at 1823.  Most attendees at school-board meetings, including Smith, are "mature adults," and the invocations are "delivered during the ceremonial portion of the [school board's] meeting."  *Id.* at 1827.  "Nothing in the record suggests that members of the public are dissuaded from leaving the meeting room during the prayer, arriving late, or even . . . making a later protest."  *Id.*  Occasionally, BISD board members and other school officials will ask the audience, including any students in the audience, to stand for the

---

[14] *ACLU*, 492 U.S. at 590 n.40 (1989) (citing *Abington Sch. Dist. v. Schempp*, 374 U.S. 203 (1963)).

No. 15-11067 c/w
No. 16-11220

invocation. Those polite requests, however, do not coerce prayer.

AHA and Smith advance three colorable theories for why this should be understood as a school-prayer case. First, they claim that legislative prayers must be "internal acts" that are "entirely" for the benefit of lawmakers. As BISD acknowledges, its invocations are meant to benefit students and other attendees at school-board meetings, not just board members. But in *Galloway*, *id.* at 1825, the Court explained that lawmakers were merely the "principal audience" for the invocations, suggesting that the audience may be made up of various groups, as well as unaffiliated individuals, so long as lawmakers are the main one. In its brief, BISD explains that the board members are the invocations' primary audience. AHA and Smith have not shown otherwise.

Second, AHA and Smith claim that BISD's invocation policy does not fit within the legislative-prayer exception because it lacks a "unique history." In *Galloway*, *id.* at 1819, the Court drew on historical evidence, describing its inquiry as "determin[ing] whether the prayer practice . . . fits within the tradition long followed in Congress and the state legislatures." In *Chambers*, 463 U.S. at 790, the Court emphasized the long history of legislative prayer, explaining that Nebraska's custom was "consistent with two centuries of national practice" and would not "be cast aside."

School-board prayer presumably does not date back to the Constitution's adoption, since "free public education was virtually nonexistent at the time." *Edwards v. Aguillard*, 482 U.S. 578, 583 n.4 (1987). Nonetheless, dating from the early nineteenth century, at least eight states had some history of opening prayers at school-board meetings.[15] And *Chambers* and *Galloway* show that

---

[15] *See* Marie Elizabeth Wicks, *Prayer Is Prologue: the Impact of* Town of Greece *on the Constitutionality of Deliberative Public Body Prayer at the Start of School Board Meetings*,

No. 15-11067 c/w
No. 16-11220

there was a well-established practice of opening meetings of deliberative bodies with invocations. *See Galloway*, 134 S. Ct. at 1819.[16] Such practices date from the First Congress, which suggests that "the Framers considered legislative prayer a benign acknowledgement of religion's role in society." *Id.*[17]

We do not overlook AHA and Smith's notion that the presence of students at BISD board meetings distinguishes this case from *Chambers* and *Galloway*. That is significant, because courts must consider "both the setting in which the prayer arises and the audience to whom it is directed." *Galloway*, 134 S. Ct. at 1825. Children are especially susceptible to peer pressure and other forms of coercion. *See, e.g., Weisman*, 505 U.S. at 592. Nonetheless, the presence of students at board meetings does not transform this into a school-prayer case. There were children present at the town-board meetings in *Galloway*, as the dissenting[18] and lower court[19] opinions noted; the Court nonetheless applied

---

31 J.L. & POL. 1, 30-31 (Summer 2015).

[16] Arguably, BISD's practice of student-led invocations undermines its claim that its practice is consistent with the historical practice, given that, historically, legislative invocations were delivered by chaplains. *See Chambers*, 463 U.S. at 787–88. But the long history of chaplain-led invocations is relevant only insofar as it suggests that the Framers approved of them.

Although chaplains may be better at giving appropriately solemnizing invocations, the fact of their institutional religious affiliations risks the perception that the governmental body responsible for inviting them is affiliating itself with institutional religion. Allowing a student to give a Jewish prayer does not create the same perception of institutional entanglement that might result from a prayer from a rabbi. Thus, BISD's practice of allowing students to deliver invocations fits within the legislative-prayer exception, notwithstanding its departure from the historical practice of chaplain-led invocations.

[17] *See also id.* at 786 (stating that "[t]he opening of sessions of legislative and other deliberative public bodies with prayer is deeply embedded in the history and tradition of this country.").

[18] *Galloway*, 134 S. Ct. at 1846, 1848 (Kagan, J., dissenting).

[19] *Galloway v. Town of Greece*, 681 F.3d 20, 23 (2d Cir. 2012) (stating that "members of Boy Scout troops and other student groups have led the Pledge of Allegiance, and high school students may fulfill a state-mandated civics requirement necessary for graduation by

the legislative-prayer exception.[20] Moreover, here, as in *Galloway*, "the prayer is delivered during the ceremonial portion of the . . . meeting." *Galloway*, 134 S. Ct. at 1827.

## IV.

Although the Supreme Court has not addressed whether the legislative-prayer exception applies to school-board invocations, two circuits have. Both found that the legislative-prayer exception does not apply. In *Coles ex rel. Coles v. Cleveland Board of Education*, 171 F.3d 369, 383 (6th Cir. 1999), the court held that the legislative-prayer exception does not extend to invocations at school-board meetings. Although such meetings "might be of a 'different variety' than other school-related activities . . . they are part of the same 'class' as those other activities in that they take place on school property and are inextricably intertwined with the public school system." *Id.* at 377. Nevertheless, the court acknowledged that it is a tough question: "This case puts the court squarely between the proverbial rock and a hard place." *Id.* at 371.

The court in *Doe v. Indian River School District*, 653 F.3d 256 (3d Cir. 2011), reached a like conclusion. It described comparisons between the school board and municipal bodies as "ill-suited," because the board's "entire purpose and structure . . . revolves around public school education." *Id.* at 278–79.

*Coles* and *Indian River* predate *Galloway* and are factually, and therefore legally, distinguishable from the circumstance at BISD.[21] *Coles* involved

---

going to Board meetings.").

[20] *See Galloway*, 134 S. Ct. at 1831 (Alito, J., concurring) (rejecting the dissent's concern that "ordinary citizens (and even children!) are often present" at town-board meetings).

[21] Establishment Clause cases often hinge on facts peculiar to each situation. *See Weisman*, 505 U.S. at 597 ("Our Establishment Clause jurisprudence remains a delicate and fact-sensitive one . . . .").

a school board that always had at least one student member. *Coles*, 171 F.3d at 383. In *Indian River*, student representatives attended board meetings "in their formal role as student government representatives." *Indian River*, 653 F.3d at 264. In contrast, no students sit on the BISD board, BISD board members do not deliver the invocations, and the student representatives are not expected to attend board meetings.

At least two other circuit-court decisions—including one by this court—have touched on these issues.[22] Both predate *Galloway* and turn on an argument the Court rejected there.

In *Bacus v. Palo Verde Unified School District Board of Education*, 52 F. App'x 355, 356–57 (9th Cir. 2002) (per curiam), the court assumed *arguendo* that the legislative-prayer exception applies to school-board invocations but held the district's policy unconstitutional because of the sectarian nature of the invocations. In *Doe v. Tangipahoa Parish School Board*, 473 F.3d 188 (5th Cir. 2006), *vacated on reh'g en banc*, 494 F.3d 494 (5th Cir. 2007), a split panel of this court struck down a school board's invocation policy.[23] One of the judges in the majority did so on account of the sectarian nature of the invocations. *Id.* at 202–04. But in *Galloway*, 134 S. Ct. at 1820–23, the Court said the Constitution does not require invocations to be non-sectarian.[24]

---

[22] Two district courts (in addition to the court *a quo*) have discussed the issue. In *Freedom from Religion Foundation v. Chino Valley Unified School District Board of Education,* 2016 U.S. Dist. LEXIS 19995, at *31–32 (C.D. Cal. Feb. 18, 2016), the court found that the legislative-prayer exception does not apply to a school board's practice of beginning its meetings with invocations. In *Doe v. Tangipahoa Parish School Board*, 631 F. Supp. 2d 823, 839 (E.D. La. 2009), the court found that the legislative-prayer exception did apply to a school board's practice of beginning school-board meetings with invocations.

[23] The en banc court vacated that decision for lack of standing.

[24] BISD's case is factually distinguishable from *Bormuth v. County of Jackson*, 849 F.3d 266 (6th Cir. 2017), *vacated for reh'g en banc*, 2017 U.S. App. LEXIS 3564 (6th Cir.

No. 15-11067 c/w
No. 16-11220

V.

BISD board members often stand and bow their heads during the student-led invocations. AHA and Smith claim that violates the Establishment Clause regardless of whether the invocation policy itself is constitutional. They point to *Doe v. Duncanville Independent School District*, 70 F.3d 402, 406 (5th Cir. 1995), holding that a high-school basketball coach's participation in team prayers, on the basketball court at games, was an "unconstitutional endorsement of religion." AHA and Smith note that unlike that case, this one concerns high-level school district officials (such as principals and board members), some of whom publicize their religious affiliation on the district's website. Moreover, in *Duncanville* a member of the team was mocked and "required to stand by while the team prayed and was confronted by spectators who asked, "Aren't you a Christian" and by a teacher who, in class, called her a "little atheist." *Id.* at 404.

This case, by way of stark contrast, concerns legislative prayers. It is distinguishable from *Duncanville* for that reason alone. Legislative prayers are recited for the benefit of legislative officers. It would be nonsensical to permit legislative prayers but bar the legislative officers for whom they are being primarily recited from participating in the prayers in any way. Indeed, the Supreme Court did not take issue with the fact that Town of Greece board members bowed their heads during invocations. *Galloway*, 134 S. Ct. at 1826.[25]

---

Feb. 27, 2017), which also involved the legislative-prayer exception. *Bormuth* concerned a county board whose members personally delivered religious invocations and "affirmatively excluded non-Christian prayer givers." *Id.* at 287. The record suggests that board members "singled out [the plaintiff] for opprobrium" and may have denied him a spot on a particular committee in retaliation for his criticisms of the board's invocation policy. *Id.* at 286.

[25] We do not reach BISD's arguments that the student-led invocations are private

12

No. 15-11067 c/w
No. 16-11220

VI.

"[L]egislative prayer lends gravity to public business, reminds law-makers to transcend petty differences in pursuit of a higher purpose, and expresses a common aspiration to a just and peaceful society." *Galloway*, 134 S. Ct. at 1818 (citing *Donnelly*, 465 U.S. at 693). Although it is possible to imagine a school-board student-expression practice that offends the Establishment Clause, this one, under its specific facts, does not.[26] In No. 16-11220, the summary judgment is AFFIRMED. In No. 15-11067, the order denying summary judgment is REVERSED, and a judgment of dismissal is RENDERED.

---

speech and that the district's policy satisfies the conventional Establishment Clause tests.

[26] It is thus unnecessary for us to decide whether a contrary practice, which would prohibit student speakers from religious expression at school-board meetings, would offend the Free Exercise Clause. Nor do we opine on the assertion, by thirteen states and two state governors, appearing severally as *amici curiae*, that "what [AHA and Smith] are truly seeking is a ban on allowing students to express a religious message during their remarks."