# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

December 2, 2022

Lyle W. Cayce
Clerk

No. 21-20279

FREEDOM FROM RELIGION FOUNDATION, INC.; JOHN ROE,

*Plaintiffs—Appellees*,

*versus*

WAYNE MACK, *in his individual capacity*,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:17-CV-881

## PUBLISHED ORDER ON REHEARING EN BANC

Before JOLLY, SMITH, and ENGELHARDT, *Circuit Judges*.

PER CURIAM:

At the request of one of its members, the court was polled on rehearing en banc. Because a majority of the judges in regular active service and not disqualified did not vote in favor, rehearing en banc is DENIED.

In the poll, 3 judges voted in favor of rehearing (Judges Dennis, Graves, and Higginson), and 12 judges voted against rehearing (Chief Judge

Richman and Judges Jones, Smith, Stewart, Elrod, Southwick, Haynes, Willett, Duncan, Engelhardt, Oldham, and Wilson).*

---

* Judge Ho is recused and did not participate.

Stephen A. Higginson, *Circuit Judge*, joined by Graves, *Circuit Judge*, dissenting from denial of rehearing en banc:

A command to bow for prayer in a public courtroom, coupled with retaliation against those who do not submit, violates the Establishment Clause of the First Amendment. Because our court disagrees, I respectfully dissent from denial of rehearing en banc.

Texas Justice of the Peace Wayne Mack starts each court session with an "opening ceremony" that includes a prayer by a chaplain. *See* ROA.1649, 1674-75. Those present who do not want to participate are told they may leave the public courtroom before Mack enters and the prayer begins. *See, e.g.*, ROA.1674. Then, as our court explicitly asserts, "[t]he bailiff directs the able audience members to stand and bow their heads during the prayer."[1] What our court does not acknowledge, however, is evidence, highlighted by the district court, that Mack then "survey[s] the courtroom" to check for compliance, ROA.1667-68; *see Freedom From Religion Found., Inc. v. Mack*, 540 F. Supp. 3d 707, 711 n.2, 715 n.10 (S.D. Tex. 2021), *rev'd*, 49 F.4th 941 (5th Cir. 2022), and evidence that Mack punishes litigants who refuse to participate, *see* ROA.1139, 1668. For example, one attorney who did not bow said that Mack denied him civil damages to which he was legally entitled. ROA.1668 ("Judge Mack refused to award me the damages I requested to compensate for two months of outstanding rent even though I was entitled to that by law."). And a criminal defendant who did not bow claimed that Mack tried to impose a higher fine than the one for which the defendant had plea

---

[1] This holding differs from how the district court and the parties characterized the record. Because crucial underpinnings for our court's leap in Establishment Clause jurisprudence are disconnected from the summary-judgment evidence, I leave record citations in this opinion. On the one hand, evidence that Mack punishes disobedience is overlooked while, on the other, little evidence supports our court's explicit constitutional approval of a court directive to bow. *See, perhaps*, ROA.625, 1133, 1139, 1632, 1646, 1653, 1667, 2109.

bargained. ROA.1139 ("I did not bow my head for prayer and instead watched [Mack], who also did not bow his head, scan the courtroom[.] . . . When he called us up[,] he immediately said[,] 'I only have one problem with this[,]' while scratching out the agreed upon . . . fine and writing in . . . a higher fine." (alterations omitted)). Our court calls this evidence "speculative." Suffice it to say a reasonable factfinder could decide otherwise.

None of the history cited by our court contemplates a judicial command "to stand and bow" for prayer, much less under threat of retaliation. At best, our court digs up "scattered evidence" that some nineteenth- and twentieth-century courts started with a prayer. Along with other evidence that prayers have been said and God invoked in courtrooms, our court thinks this is enough to prove that "courtroom prayer is consistent with a broader tradition of public, government-sponsored prayer." I agree with the dissenting panel opinion that this history is too thin to justify that conclusion, but I would add that our court's answer is pitched at the wrong level of generality. As the Supreme Court said in *Town of Greece v. Galloway*, the question is whether "history shows that the *specific practice* is permitted," not whether a general practice is permitted. 572 U.S. 565, 577 (2014) (emphasis added); *see id.* ("The Court's inquiry, then, must be to determine whether the [legislative] *prayer practice in the town* . . . fits within the tradition long followed in Congress and the state legislatures." (emphasis added)); *Rowan Cnty. v. Lund*, 138 S. Ct. 2564, 2566 (2018) (Thomas, J., dissenting from denial of certiorari) (explaining that *Galloway*'s historical inquiry concerns the "specific practice" at issue, for example, whether "the person leading the prayer" was historically permitted to do so); *see, e.g.*, *Am. Humanist Ass'n v. McCarty*, 851 F.3d 521, 527 n.16 (5th Cir. 2017) (focusing on specific practices).[2] Here, our court does not show that Mack's specific

---

[2] Courts of appeals have disagreed about what test applies under *Galloway*. *Compare Freedom From Religion Found., Inc. v. Mack*, 49 F.4th 941, 951 (5th Cir. 2022), *with New Doe*

practices—for a bailiff to instruct litigants "to stand and bow," the judge to monitor compliance, and noncompliant parties to get less favorable treatment—"fit[] within [a] tradition long followed" in American courts. *Galloway*, 572 U.S. at 577.

No Justice on the *Galloway* Court would have upheld Mack's court prayer. Six Justices explicitly rejected the possibility that it would be constitutional for "a litigant awaiting trial" to be "asked by the presiding judge to rise for a Christian prayer." *Id.* at 603 (Alito, J., concurring) (joined by Justice Scalia); *id.* at 617 (Kagan, J., dissenting) (joined by Justices Ginsburg, Breyer, and Sotomayor). Two more said that a government-sponsored prayer would be unconstitutionally coercive if officials "directed the public to participate in the prayers, singled out dissidents for opprobrium, or indicated that their decisions might be influenced by a person's acquiescence in the prayer opportunity." *Id.* at 588 (op. of Kennedy, J.) (joined by Chief Justice Roberts and Justice Alito). Those conditions are present here. *See* ROA.1139, 1667-68. Finally, while Justice Thomas wrote

---

*Child #1 v. United States*, 901 F.3d 1015, 1021 (8th Cir. 2018) (deriving a two-part test from *Galloway*; at step one, asking whether history "has spoken to" a specific practice, and if not, at step two, "look[ing] to the historical understandings of the Establishment Clause as informed by other relevant practices"), *Barker v. Conroy*, 921 F.3d 1118, 1129-30 (D.C. Cir. 2019) (applying "a two-step process"; at step one, "identify[ing] the essential characteristics of the practice," and, at step two, "determin[ing] whether that practice falls within the tradition the Supreme Court has recognized as consistent with the Establishment Clause"), *Fields v. Speaker of Pa. House of Representatives*, 936 F.3d 142, 149 (3d Cir. 2019) (considering whether legislative policy "preferring theistic over nontheistic prayers fits squarely within the historical tradition of legislative prayer"), *Bormuth v. Cnty. of Jackson*, 870 F.3d 494, 509 (6th Cir. 2017) (rejecting "granular view of legislative prayer"), *Freedom From Religion Found., Inc. v. Chino Valley Unified Sch. Dist. Bd. of Educ.*, 896 F.3d 1132, 1144 (9th Cir. 2018) (undertaking a "fact-sensitive inquiry" in "evaluating whether the identified historical tradition . . . does indeed encompass a particular prayer practice" (cleaned up)), *and Lund v. Rowan Cnty.*, 863 F.3d 268, 294 (4th Cir. 2017) (en banc) (Motz., J., concurring) (explaining that it is improper under the Supreme Court's legislative-prayer cases to "shoehorn" "a significantly different modern practice" into a "tradition begun by the First Congress").

separately to express his view that the Establishment Clause was not incorporated against the states, he accepted that if the Establishment Clause were incorporated, "actual legal coercion" would violate it. *Id.* at 608-10 (Thomas, J., concurring in part and concurring in the judgment) (joined by Justice Scalia). It is hard to see Mack's conduct as anything but, in Justice Thomas's words, Mack's "exercise[] [of] government power in order to . . . compel religious observance." *Id.* at 608.

Given the structure of the First Amendment, it makes sense that Mack's court prayer is unconstitutional under any test. The Free Exercise and Establishment Clauses are "complementary." *Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407, 2426 (2022). In other words, the prohibition against government-established religion does not usually override an individual's freedom to exercise religion. *See id.* at 2426-28. But the Establishment Clause kicks in where government forces participation in religious speech. *See id.* at 2428-32. Following this insight, the animating trend in the Court's First Amendment cases has been to maximize free exercise of religion provided it is free of government coercion. *See id.* at 2431; *see also Shurtleff v. City of Bos.*, 142 S. Ct. 1583, 1609-10 (2022) (Gorsuch, J., concurring in the judgment). What Mack does theocratically in a public courtroom—commanding other Americans "to stand and bow" in religious obeisance—crosses the line. *See W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 633 & n.13 (1943) (treating as a First Amendment parable the legend of how William Tell refused to bow to a bailiff's hat and as punishment was sentenced to shoot an apple off his son's head).

If nothing else, our court should hold that it is coercive to tell a criminal defendant, whose appearance is mandatory, "to stand and bow" for prayer. Although the defendants appearing before Mack are accused of

misdemeanors punishable by fines, not incarceration,[3] *see* Tex. Code Crim. Proc. Ann. arts. 4.01(9), 4.11, 4.14(b)(1); Tex. Gov't Code § 27.031(e), Mack's power over them is far reaching and their sensitivity to his pressure is acute. The fines Mack imposes could keep a low-income family from paying rent or putting food on the table. *See* Tex. Penal Code § 12.23 (capping applicable fines at $500); *see also* Ilya Slavinski & Kimberly Spencer-Suarez, *The Price of Poverty: Policy Implications of the Unequal Effects of Monetary Sanctions on the Poor*, 37 J. CONTEMP. CRIM. JUST. 45, 51-54 (2021) (studying impacts of fines on low-income Texans). And the collateral consequences of being convicted of a misdemeanor can be life altering. Because a misdemeanor conviction leaves a criminal record that prospective employers and landlords check, a person who pleads guilty or is convicted in Mack's court might not be able to get a job or housing. *See* Alexandra Natapoff, PUNISHMENT WITHOUT CRIME: HOW OUR MASSIVE MISDEMEANOR SYSTEM TRAPS THE INNOCENT AND MAKES AMERICA MORE UNEQUAL 28-30, 31-32 (2018). They may also lose a firearms license, Tex. Occ. Code § 53.021(a-1), have their driver's license suspended, Tex. Transp. Code § 521.292(a)(2), (b), or lose child custody, Tex. Fam. Code § 153.004(d)(1); *see id.* § 71.004(1). So a criminal defendant who does not want to leave the court to which he has been summonsed, or participate in a court prayer, is put to an intolerable—and unconstitutional—choice. Either bow to a faith in which he may not believe or refuse and risk everything.

Aside from harming individuals, compulsory prayer also damages the public's trust that courts are impartial decisionmakers. The federal and

---

[3] Crimes over which Mack has jurisdiction include assault, Tex. Penal Code § 22.01(c), theft of property worth less than $100, *id.* § 31.03(e)(1), disorderly conduct, *id.* § 42.01(d), and public intoxication, *id.* § 49.02(c), as well as more specific offenses like shining a laser pointer at a security guard, *id.* § 42.13(c), and attending a cockfight, *id.* § 42.105(g).

Texas constitutions empower judges to decide justiciable controversies, *see Patterson v. Planned Parenthood of Hous. & Se. Tex., Inc.*, 971 S.W.2d 439, 442-43 (Tex. 1998); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992), not to commandeer public courtrooms for their prayer services. As the panel dissenting opinion notes, Mack went even further by "affirmatively stat[ing] that he seeks to spread the gospel of Jesus Christ," making "a campaign promise to establish prayer in his courtroom," and "previously criticiz[ing] opponents of his prayer ceremony." Due process requires "a neutral and detached judge in the first instance," *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Tr. for S. Cal.*, 508 U.S. 602, 617 (1993) (quoting *Ward v. Vill. of Monroeville*, 409 U.S. 57, 62 (1972)), not a judge who favors parties who pray. A judge undermines the rule of law when he steps outside his constitutional role and into a political or clerical one, directing persons, even criminal defendants, "to stand and bow" for prayer in a court where he is privileged to preside.

In short, our court's decision upholding a judicial officer's direction "to stand and bow . . . during [a] prayer" has no basis in tradition, runs counter to settled law, and endangers our independent judiciary.[4] Our court should have corrected this error on our own motion. Because we do not, it is left to the Supreme Court to clarify whether *Galloway* countenances or forbids government-coerced prayer in court.

For those reasons, I respectfully dissent from denial of rehearing en banc.

---

[4] Allowing Mack to order the public "to stand and bow" for prayer in court hurts religion, too. Faith is demeaned and enfeebled when government enforces it. The reason is as old as the First Amendment and rooted in common sense: "ecclesiastical establishments" weaken belief in the "innate excellence" of religion and strengthen the "suspicion" of nonbelievers. James Madison, MEMORIAL AND REMONSTRANCE AGAINST RELIGIOUS ASSESSMENTS (1785), *in* 5 THE FOUNDERS' CONSTITUTION 82, 83 (Philip B. Kurland & Ralph Lerner eds., 1987).